UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Devin Richardson,

      Plaintiff,

      v.                                   Civil Action No. 1:15–cv–120

State of Vermont, Vermont Department
of Corrections, Andrew Pallito, Greg Hale,
and Matthew Brouillette,

      Defendants.

## REPORT AND RECOMMENDATION
(Doc. 21)

Plaintiff Devin Richardson, proceeding *pro se*, brings this action under 42 U.S.C. § 1983, alleging that his due process and substantive due process rights were violated during the course of prison disciplinary proceedings and prolonged disciplinary segregation while he was in the custody of the Vermont Department of Corrections as a federal pretrial detainee.  (*See* Doc. 11.)  Plaintiff seeks $250,000 in compensatory and punitive damages, and an award of "court cost[s] and disbursements" (*id.* at 6) against Defendants the State of Vermont, the Vermont Department of Corrections (DOC), Commissioner Andrew Pallito, Superintendent Greg Hale, and hearing officer Matthew Brouillette (*id.* at 1).

Plaintiff filed his initial Complaint on June 10, 2015.  (Doc. 4.)  On June 29, after being granted leave to amend, Plaintiff filed an Amended Complaint.  (Doc. 11.) Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 21.)  Defendants argue as follows: (1) Plaintiff's monetary damages claims are barred by the doctrine of sovereign immunity under the Eleventh Amendment; (2) Plaintiff's claims against Defendants Pallito and Hale in their individual capacities fail to allege sufficient facts showing their personal involvement in any allegedly unlawful action; (3) Plaintiff fails to state a deprivation of his due process rights based on his disciplinary segregation, and in any event, he received an adequate due process hearing; and (4) Defendants are entitled to qualified immunity.  (*Id.*)

For the reasons stated below, I recommend that Defendants' Motion to Dismiss be GRANTED in part and DENIED in part.

## Background

For purposes of deciding Defendants' Motion, the Court accepts as true all of the factual allegations contained in Plaintiff's Amended Complaint, as summarized below. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As discussed in greater detail below, Plaintiff was a federal pretrial detainee who during the relevant period was incarcerated with the Vermont DOC at Northwest State Correctional Facility (NWSCF) in Swanton, Vermont.  (Doc. 11 at 1.)  On April 14,

2015, Plaintiff was summoned to a disciplinary hearing for his alleged refusal to submit to "a urine analysis" on April 8.  (*Id.* at 1–2.)  Defendant Brouillette presided over the hearing.  (*Id.* at 2.)  After Plaintiff's request for a continuance was denied, he pled guilty to the charge of "refusing to submit to a urine analysis."  (*Id.* at 1–2.)  Brouillette "sent[e]nced [P]laintiff to serve four . . . days in the disciplinary segregation unit." (*Id.* at 2.)  At the end of the hearing, Plaintiff was not given "any written statement [of] the evidence relied upon or the reason for the action taken."  (*Id.*)

Following the hearing, Plaintiff was placed in the disciplinary segregation unit at NWSCF.  (*Id.*)  On April 19, realizing that it was his fifth day of segregation, Plaintiff asked an officer when he would be released.  (*Id.*)  Plaintiff was told that his release date had been on April 18, but because inmates are not released from segregation on weekends, he had been placed on "Bedspace status" until Monday, April 20, when he would be released.  (*Id.*)  Plaintiff was not provided with any written notice informing him of this two-day extension of his segregation.  (*Id.*)

In the morning of April 20, Plaintiff was released from the disciplinary segregation unit and returned to general population at NWSCF.  (*Id.*)  At around 3:00 that afternoon, he received "a copy of the written statement of the evidence relied upon and the reasons for the action taken in establishing [his] guilt at the [April 14] disciplinary hearing."  (*Id.* at 3.)  According to the hearing officer's determination, Plaintiff's segregation was supposed to have ended on April 17, not April 18.  (*Id.*)  Thus, Plaintiff

was held in the disciplinary segregation unit "for three . . . days beyond the sanction imposed by the hearing officer." (*Id.*)

## Analysis

### I.      Rule 12(b)(6) Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Although plausibility is not a 'probability requirement,' [p]laintiffs must allege facts that permit 'more than a sheer possibility that a defendant has acted unlawfully.'" *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Two principles guide a plausibility determination. *See Iqbal*, 556 U.S. at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Turkmen*, 789 F.3d at 233 (quoting *Iqbal*, 556 U.S. at 678). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007), *rev'd*, 556 U.S. 662 (2009)).

"Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). When parties seek dismissal of *pro se* complaints under Rule 12(b)(6), "courts 'apply[ ] a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel.'" *Thompson v. Pallito*, 949 F. Supp. 2d 558, 571 (D. Vt. 2013) (alteration in original) (quoting *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000)). Even so, a complaint filed by a *pro se* plaintiff "must state a plausible claim for relief." *Hogan*, 738 F.3d at 515.

## II.    Section 1983

Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws . . . .'"  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in

original) (quoting 42 U.S.C. § 1983).  "The purpose of § 1983 is to deter state actors from

using the badge of their authority to deprive individuals of their federally guaranteed

rights and to provide relief to victims if such deterrence fails."  *Id.* (citing *Carey v.

Piphus*, 435 U.S. 247, 254–57 (1978)).  "A § 1983 claim has two essential elements:

(1) the defendant acted under color of state law; and (2) as a result of the defendant's

actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional

rights or privileges."  *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress

for the deprivation of rights established elsewhere."  *Thompson*, 949 F. Supp. 2d at 569

(quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

## III.  Eleventh Amendment Immunity

Defendants assert that Plaintiff's damages claims against the DOC, and Pallito,

Hale, and Brouillette in their official capacities are barred by the doctrine of sovereign

immunity under the Eleventh Amendment.  (Doc. 21 at 3.)  In response, Plaintiff claims

that the State of Vermont "waived its Eleventh Amendment immunity," arguing that the

State "was under contract, by the federal government[,] to hold federal detainee[]s," and

because of that contract, the State "voluntarily invoked federal jurisdiction."  (Doc. 24

at 5.)  Plaintiff further argues that Defendants should not be permitted "to take cover

behind sovereign immunity, for the practice of an unconstitutional regulation and for

violations of well[-]established constitutional rights."  (*Id.*)

6

The Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)). The immunity extends to government entities such as state agencies "that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). The doctrine of sovereign immunity under the Eleventh Amendment also "protects state officials sued for damages in their official capacity." *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). The Eleventh Amendment does not bar claims against state officials in their individual capacities. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

There are two exceptions to the sovereign-immunity doctrine. First, a state can choose to waive its sovereign immunity under the Eleventh Amendment by "mak[ing] a 'clear declaration' that it intends to submit itself to [a federal court's] jurisdiction," *In re Charter Oaks Assocs.*, 361 F.3d at 767 (second alteration in original) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)), or "by voluntarily invoking federal jurisdiction, as when the state itself brings a federal suit

or removes a case from state to federal court," *In re Deposit Ins. Agency*, 482 F.3d 612,

617 (2d Cir. 2007).  Second, "Congress by statute may abrogate state immunity."  *Id.*; *see*

*also Mich. Dep't of State Police*, 491 U.S. at 66 ("The Eleventh Amendment bars such

suits unless the State has waived its immunity, or unless Congress has exercised its

undoubted power under § 5 of the Fourteenth Amendment to override that immunity."

(citation omitted)).

      Here, the two exceptions do not apply.  First, the State of Vermont has not waived

its immunity through an express declaration.  *See Thompson*, 949 F. Supp. 2d at 572

("Vermont has not waived its sovereign immunity under § 1983." (citing Vt. Stat. Ann. tit

12, § 5601(g))).  The State of Vermont also has not invoked federal jurisdiction: the State

did not initiate this case or remove the case to federal court.  And contrary to Plaintiff's

argument, the existence of a purported contract between Vermont and the federal

government is irrelevant to the Eleventh Amendment analysis.  Even if a contract

existed—which Plaintiff fails to allege in the Amended Complaint—the fact of its

existence, without more, would not indicate that Vermont consented to suit in federal

court.  As for the second exception, it also does not apply here because Congress has not

abrogated the state's immunity by statute.  *See Muhammad v. Gold*, No. 1:05–CV–146,

2007 WL 3088133, at *2 (D. Vt. Oct. 23, 2007) ("There is no indication in 42 U.S.C.

§ 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme

Court has specifically held that Congress did not intend to override well-established

immunities such as state sovereign immunity when it enacted § 1983."); *see also Quern*

*v. Jordan*, 440 U.S. 332, 340–41 (1979).  Accordingly, Plaintiff's claims against the State of Vermont are barred by the doctrine of sovereign immunity under the Eleventh Amendment.[1]

To the extent that Plaintiff alleges official-capacity claims against Defendants Pallito, Hale, and Brouillette, those claims also are barred by the Eleventh Amendment. Eleventh Amendment immunity barring suit against a state "remains in effect when [s]tate officials are sued for damages in their official capacity."  *Kentucky*, 473 U.S. at 169 (citing *Cory v. White*, 457 U.S. 85, 90 (1982)).  Defendants Pallito, Hale, and Brouillette are officials of the State of Vermont.  Pallito is the DOC Commissioner; Hale is a superintendent within the DOC; and Brouillette is the DOC officer who presided over Plaintiff's disciplinary hearing.  (*See* Doc. 11 at 1, 2.)  Accordingly, these three Defendants are immune in their official capacities from suits for damages under the Eleventh Amendment.

For these reasons, I recommend that Defendants' Motion to Dismiss be GRANTED, insofar as it seeks dismissal of Plaintiff's claims against the State of Vermont, and Pallito, Hale, and Brouillette in their official capacities.

---

[1]  Somewhat confusingly, the Amended Complaint lists "The State of Vermont/State of Vermont DOC" as a single defendant: "Defendant No. 1."  (Doc. 11 at 1.)  Notably, however, Defendants, in their sovereign-immunity argument, refer only to "the Department and named-Defendants in their official capacities" and not to the State of Vermont.  (Doc. 21 at 3.)  Conversely, Plaintiff, in his response to this argument, refers only to the "State of Vermont" and not to the DOC.  (Doc. 24 at 5.)  The actual distinction between the State of Vermont and the DOC is inconsequential for purposes of the sovereign-immunity analysis, given that, as "an arm of the state," the DOC, like the State of Vermont, is immune from suit under the Eleventh Amendment.  *See Woods*, 466 F.3d at 236.  Consequently, the Court disregards any confusion on this issue, and assumes that Defendants move to dismiss the claims against "Defendant No. 1" in its entirety and as against both the State of Vermont and the DOC.  (*See* Doc. 11 at 1.)  For the remainder of this Report and Recommendation, however, the Court considers "Defendant No. 1" to be the State of Vermont.

## IV.     Personal Involvement

Defendants argue that Plaintiff's claims against Pallito and Hale in their individual capacities "should be dismissed[,] as Plaintiff cannot demonstrate facts sufficient to show that they were personally involved in the alleged unlawful conduct."  (Doc. 21 at 4.) Plaintiff responds that Pallito "had either actual or constructive notice of the unconstitutional procedures . . . employed at the Northwest [S]tate [C]orrectional [F]acility," and that Hale "had at least constructive notice of the practices employed at the . . . correctional facility he controlled."  (Doc. 24 at 5.)  Additionally, Plaintiff argues that Defendants Pallito and Hale are liable "not for the actions of their agents, but rather for their 'GROSS NEGLIGENCE' and 'DELIBERATE INDIFFERENCE' to the [c]onstitutional [r]ights of inmates at the Northwest [State] Correctional [F]acility, as indicated by their knowledge that [u]nconstitutional practices were taking place, and their failure to act on the basis of that information."  (*Id.*)

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  The Second Circuit held as follows:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the

defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[2]  Additionally, personal involvement "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply."  *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)); *see also Colon*, 58 F.3d at 874 ("The bare fact that [Commissioner] Coughlin occupies a high position in the New York prison hierarchy is insufficient to sustain Colon's claim.").

Here, Plaintiff does not set forth facts to support a plausible claim that Defendant Pallito was personally involved in the alleged constitutional violations.  As the Second Circuit has stated, personal involvement can be demonstrated by a supervisor's deliberate indifference or gross negligence, "provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury."  *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).  Plaintiff's Amended Complaint presents only a "[m]ere recitation of the *Colon* factors," without factual allegations showing Pallito's "direct participation" in an alleged constitutional violation, or any specific facts "tending to show [his] deliberate indifference" to such a violation.  *Grenier v. City of West Haven*, Civil

---

[2]  In *Grullon v. City of New Haven*, the Second Circuit recognized that "the Supreme Court's decision in *Ashcroft v. Iqbal* . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations."  *Grullon*, 720 F.3d 133, 139 (2d Cir. 2013); *see also Raspardo v. Carlone*, 770 F. 3d 97, 117 (2d Cir. 2014) (declining to decide "contours of the supervisory liability test . . . after *Iqbal*").  Still, the Second Circuit has not specifically overruled *Colon*, and this Court continues to treat it as good law.  *See, e.g.*, *Jones v. Pallito*, No. 2:14–cv–199, 2015 WL 2376347, at *5 n.9 (D. Vt. May 18, 2015).

No. 3:11CV808 (JBA), 2012 WL 4092587, at *5 (D. Conn. Sept. 17, 2012) (finding
*Iqbal* standard not met where *Colon* factors only "conclusorily recited").  Plaintiff's
conclusory statements regarding Pallito's "gross negligence" and "deliberate
indifference" fail to establish an "affirmative causal link" between Pallito and the alleged
constitutional violations.  *Poe*, 282 F.3d at 140.  Therefore, the Court cannot plausibly
infer Pallito's personal involvement under *Colon* factors four and five.  Moreover,
Plaintiff's Amended Complaint does not set forth any facts demonstrating that Pallito
actually knew, or should have known, about Plaintiff's allegedly unconstitutional
disciplinary hearing and segregation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.
1994) (holding commissioner not liable because he "was never put on actual or
constructive notice of the violation").  Because Pallito cannot be held liable solely on the
basis of his authority as Commissioner of the DOC, *see Colon*, 58 F.3d at 874, Plaintiff's
claims regarding Pallito's personal involvement have no merit.

Plaintiff also has failed to demonstrate Defendant Hale's personal involvement in
the alleged due process and substantive due process violations.  The Amended Complaint
does not allege facts from which the Court can infer that Defendant Hale was grossly
negligent in his supervision of subordinates or that he was deliberately indifferent to
Plaintiff's constitutional rights.  Thus, Plaintiff does not show an "affirmative causal
link" between Defendant Hale and Plaintiff's alleged constitutional injuries.  *See Poe*,
282 F.3d at 140.

In his opposition to Defendants' Motion, Plaintiff claims that a prison regulation about "segregation reports" demonstrates Hale's knowledge of the alleged violations and also, presumably, Pallito's personal involvement under *Colon*'s second factor.  (Doc. 24 at 5.)  *See Colon*, 58 F.2d at 873 ("[T]he defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong.").  Yet Plaintiff presents no factual allegations that Hale *actually* prepared these reports.  He only speculates that "[i]f this departmental regulation is in fact being followed[,] Superintendent Hale has to know about inmates being placed on the invalid bed space regulation," and "Commissioner Pallito has to have at the very least constructive notice, because [he assures that Pallito] receive[]s some form of notification based on these segregation reports."  (Doc. 24 at 5.) It is unlikely that the alleged April 2015 violations would have been documented in the reports.  (*See id.*)  According to Plaintiff, the reports provide only information about inmates' identities; "serious functional impairment[s]"; date of "placement on segregation"; "reason for placement"; and "length of the stay" in segregation.  (*Id.*) There is no indication that the reports provide information about *extended* segregation, or what Plaintiff refers to in his Amended Complaint as "Bedspace status."  (*See* Doc. 11 at 2.)  Therefore, it does not appear that a report would have informed Pallito that Plaintiff's confinement allegedly had been extended without prior notice.

Absent factual allegations that a report containing documentation of the alleged constitutional violations was generated by Hale and subsequently read by Pallito, the Court cannot infer Pallito and Hale's personal involvement.  Accordingly, I recommend

13

that Defendants' Motion to Dismiss be GRANTED, insofar as it seeks dismissal of Plaintiff's claims against Defendants Pallito and Hale in their individual capacities.[3]

## V.   Constitutional Claims: Procedural and Substantive Due Process

### A.   Procedural Due Process

Defendants argue that Plaintiff fails to state a claim under the Due Process Clause of the Fourteenth Amendment because Plaintiff "does not have a liberty interest in his disciplinary segregation," and even if he did, he received a "due process hearing," which constituted sufficient process.  (Doc. 21 at 6, 7.)  In the Amended Complaint, Plaintiff asserts that Defendants violated his due process rights by: (1) "failing to furnish [him] with a written statement of the evidence relied upon and the reason for the action taken promptly at the conclusion of the disciplinary hearing"; (2) "extending [his] confinement in [the disciplinary segregation unit] beyond the sanction imposed by the hearing officer, without notice or without [a] hearing"; and (3) "failing to inform [him] of his change of status from off of lock-in status (end of sanction) to Bedspace status (a status that extends confinement in [the disciplinary segregation unit])."  (Doc. 11 at 3–4.)

In advancing their Motion, Defendants apply an incorrect legal standard to Plaintiff's procedural due process claims, apparently failing to recognize that Plaintiff was a pretrial detainee—not a convicted inmate—when the alleged constitutional violations occurred in April 2015.  The Court takes judicial notice of Plaintiff's status as a pretrial detainee during the relevant period based on electronically filed court

---

[3]  Defendants do not raise Defendant Brouillette's personal involvement in the alleged constitutional violations.  Therefore, any claims against Brouillette in his individual capacity remain.

documents in Plaintiff's federal criminal case, which demonstrate that, on April 13, 2015, Plaintiff entered into a Plea Agreement with the United States, and on May 6, 2015, Plaintiff appeared for proceedings before Chief Judge Christina Reiss for a change of plea hearing.  (*See* ECF Nos. 46 and 47 in *USA v. Richardson*, 5:14-cr-00045-cr-1 (D. Vt. 2015).)  *See Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records, which includes complaints and other documents filed in federal court.").

The Second Circuit has held that pretrial detainees and convicted inmates are afforded different procedural guarantees.  *See Benjamin v. Fraser*, 264 F.3d 175, 188–90 (2d Cir. 2001).  Specifically, the U.S. Supreme Court's ruling in *Sandin v. Conner*, 515 U.S. 472 (1995), does not apply to due process challenges by pretrial detainees.  *See Best v. N.Y.C. Dep't of Corr.*, 14 F. Supp. 3d 341, 347 (S.D.N.Y 2014) ("As the Second Circuit stated in *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), '*Sandin* does not apply to pretrial detainees . . . .'").  "In *Sandin*, the Supreme Court altered the landscape of prisoner due process, constructing a new approach for analyzing claims of prisoners who are segregated from the prison population."  *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998).  "To identify a protectable liberty interest under the *Sandin* framework, prisoners must establish that a given restraint imposes an '*atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'"  *Id.* (emphasis added) (quoting *Sandin*, 515 U.S. at 482).

However, the "atypical and significant hardship" standard—which Defendants applied in their Motion to Dismiss (*see* Doc. 21 at 6–7)—does not guide the analysis of Plaintiff's disciplinary segregation here, given Plaintiff's status as a pretrial detainee. *See Benjamin*, 264 F.3d at 188–90. The standard applicable to pretrial detainees is whether the conditions of pretrial confinement amount to "punishment." *Friedland v. Otero*, Civil No. 3:11CV606 (JBA), 2014 WL 1247992, at *4 (D. Conn. Mar. 25, 2014) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979)) ("A pretrial detainee has a liberty interest under the Due Process Clause in avoiding conditions of pretrial confinement that amount to punishment."). "Not every [restriction of confinement] imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however." *Bell*, 441 U.S. at 537. "A court must decide whether the [restriction of confinement] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538; *see also Cabral v. Strada*, 513 F. App'x 99, 101 (2d Cir. 2013). Defendants fail to address whether Plaintiff's original sanction and his additional time spent in the disciplinary segregation unit amounted to "punishment" or were but "incident[s] of some other legitimate governmental purpose." *See Bell*, 441 U.S. at 538.

Defendants also err in their consideration of Plaintiff's procedural due process claims concerning his disciplinary hearing. The process due a pretrial detainee during a disciplinary hearing depends on the type of restriction imposed on the individual. For instance, in *Wolff v. McDonnell*, the Supreme Court held that "prison disciplinary

16

proceedings" must follow specific procedures in order to satisfy due process.  418 U.S.

539, 564–66, 572 (1974).  The Second Circuit explained that the *Wolff* procedures

include "written notice, adequate time to prepare a defense, a written statement of the

reasons for action taken, and a limited ability to present witnesses and evidence."

*Benjamin*, 264 F.3d at 190.  Importantly, courts must look to the *Wolff* analysis only in

certain situations: "[T]he procedures required by *Wolff* apply if the restraint on liberty is

imposed for disciplinary reasons; if the restraint is for 'administrative' purposes, the

minimal procedures outlined in *Hewitt* [*v. Helms*, 459 U.S. 460 (1983)] are all that is

required."  *Id.*  And under *Hewitt*, "'[a]n inmate must merely receive some notice of the

charges against him and an opportunity to present his views to the prison official charged

with deciding whether to transfer him to administrative segregation,' and the 'proceeding

must occur within a reasonable time following an inmate's transfer.'"  *Taylor v. Comm'r*

*of N.Y.C. Dep't of Corr.*, 317 F. App'x 80, 82 (2d Cir. 2009) (quoting *Hewitt*, 459 U.S.

at 476 n.8).  Again, Defendants overlooked Plaintiff's status as a pretrial detainee and

thus advance the wrong standard when analyzing Plaintiff's procedural due process

claims concerning his disciplinary hearing as the Motion is devoid of any reference to the

procedures required by *Wolff* and *Hewitt.*

Lastly, Defendants do not address Plaintiff's claim in the Amended Complaint that

Defendants violated his due process rights "[b]y extending Plaintiff's confinement in [the

disciplinary segregation unit] beyond the sanction imposed by the hearing officer,

without notice or without [a] hearing."  (Doc. 11 at 3–4.)

For these reasons, I recommend that Defendant's Motion to Dismiss be DENIED, insofar as it seeks dismissal of Plaintiff's procedural due process claims.

### B.   Substantive Due Process

In Plaintiff's Amended Complaint, he asserts that "Bedspace status" is "an arbitrary status that[']s not recognized by state law or by any [Vermont] DOC administrative dir[ective]."  (*Id.* at 4.)  Thus, Plaintiff claims that, "[b]y subjecting [him] to Bedspace status . . . [,] [t]he individual defendant[s], acting under color of state law[,] [v]iolated [his] Substantive Due Process right[s] under the [F]ourteenth . . . [A]mendment to the United States Constitution and 42 USC § 1983."  (*Id.* (fifth alteration in original).) Defendants do not address this claim in their Motion to Dismiss, and therefore Plaintiff's substantive due process claims remain.

## VI.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity because "Plaintiff's allegations do not establish a constitutional violation," and that, even if the Court finds a constitutional violation, Defendants are still entitled to qualified immunity because "Plaintiff's due process rights were not clearly establish[ed]."  (Doc. 21 at 8.)  Plaintiff counters that "the law concerning the scope of a[n] inmate's procedural DUE PROCESS in institutional disciplinary hearings ([]steps leading to segregation) [was] clearly established on April 14th, 2015."  (Doc. 24 at 4.)  Plaintiff continues: "The decision[]s of the . . . [S]econd [C]ircuit and the U.S. Supreme Court[] . . . established the rights

[P]laintiff claim[s].  Therefore, . . . [D]efendant[s] should not be entitled to qualified immunity."  (*Id.* at 5 (last alteration in original).)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Haynes v. Johnson*, No. 14–3999, 2015 WL 6457738, at *1 (2d Cir. Oct. 27, 2015) (summary order) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "In deciding qualified immunity, courts ask whether the facts shown [i] 'make out a violation of a constitutional right,' and [ii] 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'"  *Winfield v. Trottier*, 710 F.3d 49, 53 (2d Cir. 2013) (brackets in original) (quoting *Pearson*, 555 U.S. at 232).  "A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Haynes*, 2015 WL 6457738, at *1 (alterations in original) (quoting *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011)).

The qualified immunity defense "faces a formidable hurdle when advanced on [a Motion to Dismiss]."  *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004).  "[I]t may be asserted in a motion to dismiss under Rule 12(b)(6) of the Rules of Civil Procedure 'as long as the defense is based on facts appearing on the face of the complaint.'"  *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008) (quoting *McKenna*, 386 F.3d at 436).  "Because the qualified immunity defense necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion to

dismiss pursuant to [Rule] 12(b)(6).'" *Bernstein v. City of New York*, No. 06 Civ. 895(RMB), 2007 WL 1573910, at *9 (S.D.N.Y. May 24, 2007) (alterations in original) (quoting *Walker v. Mendoza*, No. 00–CV–93(JG), 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000)).

Here, Defendants provide only a cursory analysis of qualified immunity, and based on the allegations in Plaintiff's Amended Complaint, it is premature to dismiss Plaintiff's claims on this ground. "Depending on what evidence is adduced through discovery, dismissal of plaintiff's claims against [the Defendants] may be warranted on a properly supported motion for summary judgment, but at this point, dismissal on this basis as to [the Defendants] is premature." *See Rivera v. Fischer*, 655 F. Supp. 2d 235, 240 (W.D.N.Y. 2009). Accordingly, the Court recommends that Defendants' Motion to Dismiss be DENIED, insofar as it seeks dismissal based on qualified immunity.

## VII.   Municipal Liability

Although not addressed in Defendants' Motion to Dismiss, the Court considers the municipal-liability claims contained in the Amended Complaint *sua sponte*.

In the Amended Complaint, Plaintiff asserts a "second cause of action . . . against the [S]tate of Vermont," which is based on "[m]unicipal liability for the violations of Plaintiff's [F]ourteenth . . . [A]mendment rights." (Doc. 11 at 5.) The Amended Complaint states: "[T]he [D]efendant [S]tate of Vermont, acting through the [S]tate of Vermont [D]epartment of [C]orrections . . . and the individual [D]efendant[s], had de facto policies, practices, customs and usages with a direct and proximate cause of the

unconstitutional conduct," including "failing to properly train, screen, supervise or discipline employees and correctional officers and failing to inform the individual [D]efendant[s]['] supervisors of their need to train, screen, supervise or discipline said [D]efendant[s]."  (*Id*. (eighth, tenth, and thirteenth alterations in original).)

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).  A city may be liable "where [it] is aware that its policy may be unconstitutionally applied by inadequately trained employees but the city consciously chooses not to train them." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).  Furthermore, "§ 1983 plaintiffs may establish that the city is liable for their injuries by proving that 'the authorized policymakers approve[d] a subordinate's decision and the basis for it.'"  *Id.* at 126 (alteration in original) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)).

Here, the Amended Complaint does not name a municipality—which is defined in *Black's Law Dictionary* as "[a] city, town, or other local political entity with the powers of self-government"—as a defendant.  *See* Municipality, *Black's Law Dictionary* (10th ed. 2014).  Therefore, Plaintiff's claim of municipal liability against the State of Vermont (*see* Doc. 11 at 5) has no merit, and I recommend that the Court DISMISS it from the

Amended Complaint *sua sponte*.  *See Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) ("'The district court has the power to dismiss a complaint *sua sponte* for failure to state a claim,' so long as the plaintiff is given notice and 'an opportunity to be heard.'" (emphasis added) (citation omitted)).

### Conclusion

For these reasons, I recommend that Defendants' Motion to Dismiss (Doc. 21) be GRANTED in part and DENIED in part, as follows:

1.  GRANTED insofar as the Motion seeks dismissal of Plaintiff's claims for money damages against Defendant the State of Vermont and Defendants Pallito, Hale, and Brouillette in their official capacities;

2.  GRANTED insofar as the Motion seeks dismissal of Plaintiff's claims against Defendants Pallito and Hale in their personal capacities;

3.  DENIED insofar as the Motion seeks dismissal of Plaintiff's procedural and substantive due process claims against Defendants; and

4.  DENIED insofar as the Motion seeks dismissal of Plaintiff's claims against Defendants under the doctrine of qualified immunity.

I also recommend that the Court DISMISS Plaintiff's municipal-liability claims.

Dated at Burlington, in the District of Vermont, this 23rd of December, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).