UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Devin Richardson,

      Plaintiff,

      v.                   Civil Action No. 1:15-cv-120-jgm-jmc

State of Vermont, Vermont Department
of Corrections, Andrew Pallito, Greg Hale,
and Matthew Brouillette,

      Defendants.

## <u>AMENDED REPORT AND RECOMMENDATION</u>
(Doc. 42)

Plaintiff Devin Richardson, proceeding *pro se*, brings this action under 42 U.S.C. § 1983, alleging that his procedural and substantive due process rights were violated during prison disciplinary proceedings and a prolonged disciplinary segregation while he was a federal pretrial detainee in the custody of the Vermont Department of Corrections (DOC). (*See* Doc. 11.) Plaintiff seeks $250,000 in compensatory and punitive damages, an award of "court cost[s] and disbursements" (*id.* at 6), and "[a]ny further relief the court may deem just and appropriate" (*id.* at 6–7) against Defendants State of Vermont, the DOC, former DOC Commissioner Andrew Pallito, Superintendent Greg Hale, and hearing officer Matthew Brouillette.

Plaintiff filed his initial Complaint on June 10, 2015.  (Doc. 4.)  On June 29, after being granted leave to amend, Plaintiff filed an Amended Complaint.  (Doc. 11.)  On September 3, 2015, Defendants filed a Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 21.)  Defendants argued that Plaintiff's claims for monetary damages against the state and individual defendants in their official capacities were barred by sovereign immunity under the Eleventh Amendment; that Plaintiff had failed to establish the personal involvement of Defendants Pallito and Hale in their individual capacities in any allegedly unlawful action; that Plaintiff failed to allege a deprivation of his due process rights; and that Defendants were entitled to qualified immunity.  (*Id.*)

The Court granted in part and denied in part Defendants' Motion.  (Doc. 28; *see also* Doc. 30 (adopting Report and Recommendation).)  The Court dismissed Plaintiff's claims against the State of Vermont and Defendants Pallito, Hale, and Brouillette in their official capacities on the basis of Eleventh Amendment sovereign immunity.  (Doc. 28 at 6–9.)  The Court also dismissed Plaintiff's claims against Defendants Pallito and Hale in their individual capacities.  (*Id.* at 10–14.)  Additionally, the Court dismissed Plaintiff's municipal liability claims.  (*Id.* at 20–22.)

The Court denied Defendants' Motion to Dismiss with regard to Plaintiff's Fourteenth Amendment due process claims, explaining that Defendants had utilized an incorrect standard in analyzing these claims and had not addressed the due process claims in their entirety.  (*Id.* at 14–18.)  The Court also denied Defendants' Motion to Dismiss on the basis of qualified immunity.  (*Id.* at 18–20.)  As a result, the claims remaining in

this matter are: (1) Plaintiff's claims against Defendant Brouillette in his personal capacity; and (2) Plaintiff's claim that all Defendants have deprived him of his substantive and procedural due process rights.[1]  (*See generally* Doc. 28; *see also* Doc. 11 at 6; Doc. 42 at 2–3.)

Presently before the Court is Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Doc. 42.)  Defendants argue as follows: (1) three of Plaintiff's claims against Defendant Brouillette in his individual capacity fail to assert sufficient facts showing his personal involvement in any allegedly unlawful action; (2) Plaintiff's claims against all Defendants in their official capacities should be dismissed as moot; (3) Plaintiff fails to establish a deprivation of his due process rights, and in any event, he received adequate process prior to his disciplinary segregation; (4) Plaintiff has failed to exhaust his administrative remedies; and (5) Plaintiff has not alleged facts sufficient to satisfy the elements of a punitive damages claim under § 1983.  (*Id.*)

---

[1]  It appears that Plaintiff's claim that all Defendants deprived him of his substantive and procedural due process rights only remains to the extent that Plaintiff seeks injunctive relief.  Though Plaintiff's claims for monetary damages against Defendants in their official capacities have been dismissed as barred by the Eleventh Amendment, there is "a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions."  *Ford v. Reynolds*, 316 F.3d 351, 354–55 (2d Cir. 2003) (alteration in original) (quoting *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002)).  While Plaintiff does not specifically request injunctive relief, Plaintiff does seek "[a]ny further relief the court may deem just and appropriate."  (Doc. 11 at 6–7.)  Because Plaintiff is proceeding *pro se*, this Court construes his Amended Complaint as seeking injunctive relief, with "the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Plaintiff filed an Opposition to Defendants' Motion (Doc. 43), and Defendants

filed a Reply in response thereto (Doc. 44).  For the reasons stated below, I recommend

that Defendants' Motion for Judgment on the Pleadings (Doc. 42) be GRANTED.

## Background

For the purpose of deciding Defendants' Motion, the Court accepts as true all of

the factual allegations contained in Plaintiff's Amended Complaint, as summarized

below.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)); *see also Alcantara v. Bakery & Confectionary*

*Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 75 (2d Cir. 2014) ("In

deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion

under Rule 12(b)(6), accepting the allegations contained in the complaint as true and

drawing all reasonable inferences in favor of the nonmoving party." (quoting *Ziemba v.*

*Wezner*, 366 F.3d 161, 163 (2d Cir. 2004))).

During the relevant period, Plaintiff was a federal pretrial detainee incarcerated

with the Vermont DOC at Northwest State Correctional Facility (NWSCF) in Swanton,

Vermont.  (Doc. 11 at 1.)  On April 14, 2015, Plaintiff was summoned to a disciplinary

hearing for his alleged refusal to submit to a urine analysis on April 8.  (*Id.* at 1–2.)

Defendant Brouillette presided over the hearing.  (*Id.* at 2.)  After Plaintiff's request for a

continuance was denied, he pled guilty to the charge of "refusing to submit to a urine

analysis."  (*Id.* at 1–2.)  Brouillette "sent[e]nced [P]laintiff to serve four . . . days in the

disciplinary segregation unit."  (*Id.* at 2.)  At the end of the hearing, Plaintiff was not

given "any written statement [of] the evidence relied upon or the reason for the action taken." (*Id.*)

Following the hearing, Plaintiff was placed in the disciplinary segregation unit at NWSCF. (*Id.*) On April 19, realizing that it was his fifth day of segregation, Plaintiff asked an officer when he would be released. (*Id.*) Plaintiff was told that his release date had been on April 18, but because inmates are not released from segregation on weekends, he had been placed on "Bedspace status" until Monday, April 20, when he would be released. (*Id.*) Plaintiff was not provided with any written notice informing him of this two-day extension of his segregation. (*Id.*)

On the morning of April 20, Plaintiff was released from the disciplinary segregation unit and returned to general population at NWSCF. (*Id.*) At around 3:00 that afternoon, he received "a copy of the written statement of the evidence relied upon and the reasons for the action taken in establishing [his] guilt at the [April 14] disciplinary hearing." (*Id.* at 3.) According to the hearing officer's determination, Plaintiff's segregation should have ended on April 17, not April 18. (*Id.*) Thus, Plaintiff was held in the disciplinary segregation unit "for three . . . days beyond the sanction imposed by the hearing officer." (*Id.*)

In December 2015, Plaintiff was subsequently transferred to the Federal Correctional Institution in Schuylkill, Pennsylvania, where he is currently incarcerated. (*See* Doc. 27.)

## Analysis

### I.     Procedural Requirements of Rule 12(c)

Defendants have filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Doc. 42.)  Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).  The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)).  Accordingly, to survive a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see also* Fed. R. Civ. P. 8(a)(2).

Two principles guide a plausibility determination: first, though a court must accept as true all factual allegations in the complaint, this requirement "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *see also Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015).  "Second, only a complaint that

6

states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

When parties seek dismissal of *pro se* complaints under Rule 12(b)(6), "courts 'apply[] a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel.'" *Thompson v. Pallito*, 949 F. Supp. 2d 558, 571 (D. Vt. 2013) (alteration in original) (quoting *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000)). The basis for this liberal construction is "the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). The same policy applies to dismissals sought under Rule 12(c), as the standard for granting these motions is identical. *See First Millennium*, 607 F.3d at 922. Nevertheless, a complaint filed by a *pro se* plaintiff "must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013); *see also Thompson*, 949 F. Supp. 2d at 571.

## II.    Section 1983

Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the

7

Constitution and laws . . . .'"  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Id.*  (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).  A plaintiff bringing a § 1983 claim must establish that: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges."  *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).  Section 1983 does not by itself create any substantive rights, but rather it establishes a procedure for plaintiffs to seek damages or injunctive relief for deprivation of their statutory or constitutional rights.  *Thompson*, 949 F. Supp. 2d at 569.

## III.   Personal Involvement

Defendant Brouillette argues that three of Plaintiff's claims against him in his individual capacity should be dismissed because "Plaintiff does not allege that [he] was personally involved in any of these scenarios."  (Doc. 42 at 4–5.)  Specifically, Brouillette asserts that Plaintiff has failed to sufficiently allege his personal involvement in the following claims: (1) Plaintiff's procedural due process claim regarding the extension of his disciplinary segregation beyond the sanction imposed; (2) Plaintiff's procedural due process claim regarding Defendants' failure to inform Plaintiff of his bedspace designation; and (3) Plaintiff's substantive due process claim regarding Plaintiff's subjection to bedspace status.  (*Id.* at 4.)  Plaintiff did not respond to these arguments.  (*See* Doc. 43.)

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  The Second Circuit has held:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[2]  Additionally, personal involvement "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply."  *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam) (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)).

Here, Plaintiff does not set forth any facts to support a plausible claim that Brouillette was personally involved in the alleged constitutional violations under any *Colon* factor.  Plaintiff's Amended Complaint only mentions Brouillette by name in the context of his involvement as the presiding officer at Plaintiff's disciplinary hearing.

---

[2]  In *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013), the Second Circuit recognized that "the Supreme Court's decision in *Ashcroft v. Iqbal* . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations . . . ." *Id.* at 139; *see also Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) (declining to decide the "contours of the supervisory liability test . . . after *Iqbal*").  Still, the Second Circuit has not specifically overruled *Colon*, and this Court continues to treat it as good law.  *See, e.g.*, *Jones v. Pallito*, No. 2:14–cv–199, 2015 WL 2376347, at *5 n.9 (D. Vt. May 18, 2015).

(Doc. 11 at 2.)  Under the first two factors, the Amended Complaint does not set forth any facts demonstrating that Brouillette actually knew, or should have known, about the allegedly unconstitutional extension of Plaintiff's disciplinary segregation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (finding Commissioner was not liable because he "was never put on actual or constructive notice of the violation").  In fact, the Amended Complaint indicates that Brouillette expected Plaintiff's disciplinary segregation to conclude on time, on April 17, 2015.  (Doc. 11 at 3 ("It was also the determination rendered by the hearing officer[] that Plaintiff's [release from disciplinary segregation] was to ha[ve] ended on April 17[], 2015.  Not April 18[], 2015 (as provided by [Correctional Officer] Rochon).").)

Plaintiff also does not allege Brouillette's personal involvement under the third, fourth, or fifth *Colon* factors: he does not indicate that Brouillette created a custom of, or a tolerance for, constitutional violations; he does not allege that Brouillette was grossly negligent in his supervision of others involved in the constitutional violations; and there is no indication that Brouillette deliberately ignored information regarding the alleged violations of Plaintiff's rights.  (*See* Doc. 11; Doc. 43.)  Therefore, Plaintiff has failed to sufficiently allege Brouillette's personal involvement in the purported constitutional violations resulting from the extension of his disciplinary segregation.

Accordingly, I recommend that Defendants' Motion for Judgment on the Pleadings be GRANTED, insofar as it seeks dismissal of Plaintiff's claims for monetary damages against Brouillette in his individual capacity.[3]

## IV.    Mooted Claims for Injunctive Relief

In his Amended Complaint, Plaintiff seeks monetary damages and "[a]ny further relief the court may deem just and appropriate." (Doc. 11 at 6–7.) As discussed above, Plaintiff's claims for monetary damages against Defendants in their official capacities have been dismissed as barred by Eleventh Amendment sovereign immunity. (*See* Doc. 28 at 9; *see also* Doc. 30 (adopting Report and Recommendation).) Therefore, Plaintiff's only viable remaining claim against Defendants in their official capacities is for "any further relief," which may be construed as a claim seeking injunctive relief. *See Ford v. Reynolds*, 316 F.3d 351, 354–55 (2d Cir. 2003) ("[U]nder *Ex [P]arte Young*, 209 U.S. 123, [155–56] . . . (1908), there is 'a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions . . . .'" (fifth alteration in original) (quoting *CSX Transp. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002))).

---

[3] Plaintiff does claim that Brouillette was personally involved in the disciplinary hearing, specifically alleging that Brouillette "accepted and sentenced Plaintiff to serve four . . . days in the disciplinary segregation unit," and that Brouillette's "failure to provide Plaintiff with his findings[] prior to the imposition of the [disciplinary segregation] was a violation of Plaintiff's constitutional and regulatory due process rights." (Doc. 43 at 2, 4.) Defendants do not contest Brouillette's personal involvement in the disciplinary hearing, and thus this claim may not be dismissed against him based on lack of personal involvement. (*See* Doc. 11 at 3; Doc. 42 at 4.) As explained below, however, Plaintiff has not stated any plausible claim of due process violation. Therefore, the claim fails, regardless of Brouillette's alleged personal involvement in the disciplinary hearing.

Defendants argue that Plaintiff's remaining claims against Defendants in their official capacities for violations of his substantive and procedural due process rights must be dismissed because they are moot.  (Doc. 42 at 5.)  Defendants contend that because Plaintiff is now incarcerated at a federal prison and no longer in the custody of the Vermont DOC, he is no longer entitled to injunctive relief against the DOC.  (*Id.*)  Plaintiff did not respond to this argument.  (*See* Doc. 43.)

Under Article III of the United States Constitution, "an actual controversy must exist 'at all stages of review, not merely at the time the complaint is filed,'" in order for a federal court to exercise jurisdiction.  *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)).  A case becomes moot when "the relief sought can no longer be given or is no longer needed."  *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).  The mootness doctrine guarantees that the litigant has a continued vested interest in the outcome of the lawsuit and that a favorable decision by the court will remedy the litigant's injury.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Muhammad v. City of N.Y. Dep't of Corr.*, 126 F.3d 119, 123 (2d Cir. 1997).  If "a case becomes moot, . . . 'the court . . . loses jurisdiction over the suit, which therefore must be dismissed.'"  *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005) (citation omitted) (quoting *Russman v. Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001)).

A prisoner's claims for injunctive relief become moot when that prisoner has been transferred from the facility allegedly responsible for the constitutional violations.  *See, e.g.*, *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's

transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002) ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility."); *Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) ("Because Day is no longer housed at [Garner Correctional Institution], his claims for injunctive relief are moot.").

A case that appears moot may nevertheless be heard if it is "capable of repetition, yet evad[es] review." *Muhammad*, 126 F.3d at 123 (quoting *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911)). This exception is very limited and "will not be applied unless '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

Since filing his Amended Complaint on June 29, 2015, Plaintiff has been transferred from NWSCF to the Federal Correctional Institution in Schuylkill, Pennsylvania. (*See* Doc. 27 (change of address entered December 11, 2015).) This transfer "moots [Plaintiff's] request for injunctive relief" against Defendants because Plaintiff is no longer under the jurisdiction of NWSCF and the DOC. *Thompson*, 284 F.3d at 415. Plaintiff does not contend that the "capable of repetition, yet evading review" mootness exception applies to his case. He does not set forth any allegations indicating that the purported constitutional violations were of such a limited duration that he was unable to fully litigate them, or that he may once again be in custody at NWSCF,

13

subject to the same treatment.  Therefore, I recommend that Defendants' Motion for Judgment on the Pleadings be GRANTED, insofar as it seeks dismissal of Plaintiff's claims for injunctive relief, for lack of subject-matter jurisdiction.[4]

**V.   Constitutional Claims: Procedural and Substantive Due Process**

Assuming, *arguendo*, that Plaintiff has sufficiently alleged Brouillette's personal involvement with respect to any of the alleged constitutional violations, and, or in the alternative, that Plaintiff's claims against Defendants for injunctive relief are not moot, I proceed with an analysis of Plaintiff's remaining constitutional claims against Defendants.

**A**.   **Procedural Due Process**

In his Amended Complaint, Plaintiff asserts that Defendants violated his due process rights by: (1) "failing to furnish [him] with a written statement of the evidence relied upon and the reason for the action taken promptly at the conclusion of the disciplinary hearing"; (2) "extending [his] confinement in [the disciplinary segregation unit] beyond the sanction imposed by the hearing officer, without notice or without [a] hearing"; and (3) "failing to inform [him] of his change of status from off of lock-in status (end of sanction) to Bedspace status (a status that extends confinement in [the disciplinary segregation unit])."  (Doc. 11 at 3–4.)

---

[4]  A prison facility transfer does not, however, moot an action for damages.  *See Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989), *cert. denied*, 492 U.S. 909 (1989).  Therefore, to the extent that Plaintiff seeks monetary damages against Brouillette in his personal capacity for alleged violations of Plaintiff's due process rights during the disciplinary hearing, this claim is not moot.

Defendants argue they are entitled to judgment on the pleadings on these procedural due process claims.  (Doc. 42 at 6–11.)  They claim that Plaintiff received proper process in accordance with the Fourteenth Amendment before the disciplinary segregation.  (*Id.* at 7–8.)  They also contend that Plaintiff's subsequent designation to bedspace status did not constitute punishment implicating Plaintiff's liberty interest under the Due Process Clause.  (*Id.* at 8–9.)

In order to prevail on a Fourteenth Amendment due process claim, a plaintiff must prove that he or she (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient procedural safeguards.  *See Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998). A pretrial detainee's liberty interest under the Due Process Clause is "avoiding conditions of pretrial confinement that amount to punishment."  *Friedland v. Otero*, Civil No. 3:11cv606 (JBA), 2014 WL 1247992, at *4 (D. Conn. Mar. 25, 2014) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979)).  "Not every [restriction of confinement] imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however." *Bell*, 441 U.S. at 537.  If a pretrial detainee is subjected to punishment, he or she "is entitled to the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974)," *Friedland*, 2014 WL 1247992, at *4, including being provided with "written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence," *Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001) (citing *Wolff*, 418 U.S. at 561–70).

15

### 1.      Written Evidence from the Disciplinary Hearing

The facts alleged in the Amended Complaint indicate that Plaintiff's disciplinary

segregation was in response to Plaintiff's refusal to submit to a urine analysis, an

institutional infraction.  (*See* Doc. 11 at 1–2; *see also* Doc. 42-2 at 4 (*State of Vt. Agency

of Human Servs., Dep't. of Corr., Sec. & Supervision: Directive #410.01 Facility Rules &

Inmate Discipline* (2012)) *available at* http://www.doc.state.vt.us/about/policies/rpd/

correctional-services-301-550/401-500-programs-security-and-supervision/410-01-

facility-rules-and-inmate-discipline.pdf [hereinafter DOC Directive 410.01] ("Placement

in disciplinary segregation may only occur after finding of a rule violation at an impartial

hearing and when there is not an adequate alternative disposition to regulate the inmate's

behavior.").)  The parties apparently agree that the disciplinary segregation constituted a

punishment.  (*See* Doc. 42 at 8 ("Plaintiff's placement in disciplinary segregation for

violating a disciplinary infraction may have been considered 'punishment,' and thus,

required some due process . . . ."); Doc. 43 at 3–4.)  Because the segregation was a

punishment, Plaintiff's liberty interests were implicated and he was entitled to the due

process protections set forth in *Wolff*, as discussed above.  *See Friedland*, 2014 WL

1247992, at *4.

Plaintiff's claim relates to only one of the *Wolff* requirements: that he should have

received "a written statement of the reasons for action taken."  *Benjamin*, 264 F.3d at 190

(citing *Wolff*, 418 U.S. at 561–70).  Specifically, Plaintiff argues that he was not provided

with the hearing officer's evidentiary findings from the disciplinary hearing, at which

Plaintiff entered a guilty plea, until six days after the hearing.  (*See* Doc. 11 at 2; Doc. 43 at 2, 4.)  In response, Defendants assert that Plaintiff's receipt of these findings within six days of the hearing satisfied his due process rights under *Wolff*.  (Doc. 42 at 7–8.)

*Wolff* and subsequent cases do not address the timeframe within which a written evidentiary statement must be provided to an inmate or pretrial detainee, and Plaintiff does not cite to any case law in support of his contention that these findings had to be provided to him immediately after the hearing in order to satisfy due process.  Rather, Plaintiff points to *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999), where the Second Circuit approved a disciplinary hearing officer's provision of evidentiary findings to an inmate eight days after his disciplinary hearing, which was also the day the inmate was found guilty.[5]  (Doc. 43 at 4.)  Plaintiff's reliance on this case is misplaced.  The court in *Kalwasinski* did not explicitly address the timeframe issue, and moreover, it appears that Kalwasinski contested the violation as he had "spoke[n] in his own defense." 201 F.3d at 105, 109.  This stands in stark contrast to Plaintiff's disciplinary hearing, wherein Richardson pled guilty to the infraction.

Furthermore, the justifications for the *Wolff* procedural guarantees are not implicated here.  In *Wolff*, the Supreme Court explained that providing an inmate with a written record of proceedings would "protect [him or her] against collateral consequences

---

[5]  The Report and Recommendation filed on October 20, 2016 (Doc. 47) misstated the timeframe in *Kalwasinski*.  In *Kalwasink*i, the inmate was charged with various disciplinary infractions on October 5, 1995.  201 F.3d at 105.  The hearing on these charges was held on October 24, 1995, and the inmate was found guilty and his penalty set on November 1, 1995.  *Id.*  The inmate was also provided with a written report supporting the finding of guilt on November 1.  *Id.* at 109.  Thus, the inmate received the written evidentiary report eight days (rather than nearly a month, as was stated in the prior Report and Recommendation) after the October 24 disciplinary hearing.

based on a misunderstanding of the nature of the original proceeding" and assist him in potential subsequent litigation.  418 U.S. at 565.  The Court also noted that a written record "helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly."  *Id.*  Additionally, the Court alluded to the need for an evidentiary statement in case of an "administrative review," or "review by other bodies."  *Id.*  These concerns are not at stake in this case because Plaintiff did in fact receive the evidentiary findings that were the basis for his disciplinary segregation.  (*See, e.g.*, Doc. 11 at 3.)  Moreover, Plaintiff was not prejudiced by the delay in receiving the evidentiary findings because he had admitted to the charged violation.  Furthermore, and as Defendants point out, pursuant to DOC Facility Rules and Inmate Discipline, Plaintiff had seven business days after "receipt of the final decision" within which to file an appeal.  (Doc. 42 at 8 (citing Doc. 42-2 at 14, ¶ 9(a) (DOC Directive 410.01).); *see Lunney v. Brureton*, No. 04 Civ. 2438(LAK)(GWG), 2007 WL 1544629, at *29–30 (S.D.N.Y. May 29, 2007) (holding that prison officials' failure to provide inmate with the written disposition of the result of his disciplinary hearing in a timely fashion was a harmless error); *Johnson v. Doling*, Civ. No. 9:05-CV-376 (TJM/RFT), 2007 WL 3046701, at *10 (N.D.N.Y. Oct. 7, 2007) (finding that plaintiff's receipt of the disposition from his disciplinary hearing 30 days after the hearing "in no way prejudiced [p]laintiff, as evidenced by the fact that he filed an appeal and was ultimately successful").

In conclusion, though Plaintiff's disciplinary segregation constituted "punishment" and thus implicated his liberty interest under *Wolff*, he nevertheless received due process. He was provided with the evidentiary findings against him within six days of the disciplinary hearing where he admitted to the violation, and, in any event, had a full opportunity to appeal from the final decision.

### 2.      Extension of Plaintiff's Disciplinary Segregation

Plaintiff next argues that Defendants violated his procedural due process rights by: "extending [his] confinement in [the disciplinary segregation unit] beyond the sanction imposed by the hearing officer, without notice or without [a] hearing," and "failing to inform [him] of his change of status from off of lock-in status (end of sanction) to [b]edspace status (a status that extends confinement in [the disciplinary segregation unit])." (Doc. 11 at 3–4.)  In their Motion, Defendants refer to bedspace status as an "administrative segregation," implemented solely in the interest of prison administration and security, and argue that Plaintiff received proper notice of this designation and adequate process. (Doc. 42 at 8–9.)  Because Plaintiff contends that the bedspace status designation was the reason for his extended time in disciplinary segregation, I consider these claims to be identical and address them together.

As discussed above, a plaintiff making a Fourteenth Amendment due process claim must establish that he or she had an actual liberty interest as a threshold matter. *See Tellier*, 280 F.3d at 79–80; *Hynes*, 143 F.3d at 658.  Pretrial detainees have a liberty

interest in being free from punishment under the Due Process Clause.[6] *Friedland*, 2014 WL 1247992, at \*4.  If the pretrial detainee cannot prove that prison officials imposed a restriction with the intent to punish, then "to withstand scrutiny, the regulation need only be rationally connected to some other governmental purpose." *Tellier v. Reish*, No. 99-0028, 1999 WL 642733, at \*1 (2d Cir. Aug. 20, 1999) (citing *Bell*, 441 U.S. at 538–39; *see also Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963); *Flemming v. Nestor*, 363 U.S. 603, 617 (1960); *Cabral v. Strada*, 513 F. App'x 99, 101 (2d Cir. 2013).

For example, a restriction imposed on a pretrial detainee may be justified by the government's legitimate interest in maintaining security at its institutions.  *Bell*, 441 U.S. at 540, 546, 547.  Courts must afford institutions significant deference in their efforts to promote safety, recognizing that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546.  A court may disagree with an institution's methods of ensuring safety, but "it should not second-guess the expert administrators on matters on which they are better informed. . . ."  *Id.* at 544 (alteration in original) (citation omitted).

---

[6]  A pretrial detainee may also have a liberty interest under a state statute or regulation.  *See Byrne v. Trudell*, No. 1:12–cv–245–jgm–jmc, 2013 WL 2237820, at \*20 (D. Vt. May 21, 2013), *adopting report and recommendation* ("A state statutory scheme . . . may create a liberty interest where the Due Process Clause itself does not.").  Here, Plaintiff claims that the DOC Administrative Directives on Placement on Administrative Segregation create a liberty interest in being free from administrative segregation.  (Doc. 43 at 7 (citing *State of Vt. Agency of Human Servs., Dep't. of Corr., Sec. & Supervision: Directive #410.03 Placement on Admin. Segregation* (2012), *available at* http://doc.vermont.gov/about/policies/rpd/correctional-services-301-550/401-500-programs-security-and-supervision/410.03%20Admin%20Seg.pdf [hereinafter DOC Directive 410.03]).)  However, because Plaintiff was not placed on administrative segregation (*see* note 7, *infra*), whatever liberty interest this Administrative Directive may create does not apply here.

Here, Plaintiff's bedspace status, which extended his time outside of general population by two days,[7] was not imposed as a punishment.  Though the parties argue at length about the actual meaning of "bedspace status,"[8] they apparently agree that Plaintiff was designated as this status due to NWSCF's facility policy that inmates are not released from disciplinary segregation over the weekend.  (Doc. 11 at 2; Doc. 44 at 1–2.)  This policy does not indicate an intent to punish detainees.  *See Covino v. Vt. Dep't of Corr.*, 933 F.2d 128, 129 (2d Cir. 1991) ("'[T]he transfer of an inmate to less amenable and more restrictive quarters for non[-]punitive reasons' is not a right protected by the [D]ue [P]rocess [C]lause." (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983))).  Though Defendants do not offer a specific rationale for the weekday release policy, this Court must afford broad deference to NWSCF's methods of maintaining institutional safety and security.  The policy is rationally related to a number of conceivably legitimate government interests in preserving institutional safety, such as waiting for full staffing

---

[7]  Plaintiff also alleges in his Amended Complaint that he was released three days beyond the original scheduled release date, which Brouillette had informed him was April 17, 2015.  (Doc. 11 at 3.)  This appears to be a mathematical error because Plaintiff was sentenced to four days of disciplinary segregation on April 14, 2015, which would set his release date at April 18, 2015.  (*See* Doc. 11 at 1, 2.)  The error was harmless, however, because whether Plaintiff was released two or three days late does not impact the constitutional analysis.

[8]  Plaintiff argues that bedspace status is an unofficial status that constitutes improper rulemaking by the DOC.  (Doc. 43 at 5.)  Conversely, Defendants claim that bedspace status is equivalent to administrative segregation.  (Doc. 42 at 8–10.)  Neither party cites to a source defining bedspace status.  Notwithstanding these arguments, it is clear that bedspace status is a non-punitive designation, distinct from administrative segregation.  DOC Directive 410.03 describes reasons for placing an inmate or pretrial detainee on administrative segregation, none of which are applicable to Plaintiff's delayed release from disciplinary segregation due to NWSCF's weekday release policy.  *See* DOC Directive 410.03 at 3, ¶ 1 (indicating that an inmate may be confined on administrative segregation if he or she is awaiting a disciplinary hearing following a disciplinary violation charge, poses a serious escape risk, requests or requires protective custody, is a danger to others or the security of the facility, requires protection during the investigation of a crime, or upon the order of a doctor or other provider).

and administrative support during the week and ensuring that detainees such as Plaintiff

have an adequate location to return to in general population.  In short, it appears that

bedspace status is merely a temporary designation imposed for order and safety reasons,

and this Court may not "second-guess the expert administrators" at NWSCF on the day-

to-day operations of their facility.  *Bell*, 441 U.S. at 531.  Therefore, Plaintiff has failed to

allege a cognizable liberty claim under the Fourteenth Amendment Due Process Clause.

For these reasons, I recommend that Defendant's Motion for Judgment on the

Pleadings be GRANTED, insofar as it seeks dismissal of Plaintiff's procedural due

process claims.

### B.    Substantive Due Process

Because Plaintiff's placement on bedspace status did not involve a cognizable

liberty interest under the Fourteenth Amendment, Plaintiff also has failed to establish a

violation of his substantive due process rights.  In Plaintiff's Amended Complaint, he

asserts that "Bedspace status" is "an arbitrary status that[']s not recognized by state law

or by any [Vermont] DOC administrative dir[ective]" and that Defendants thus violated

his substantive due process rights by subjecting him to this designation.  (Doc. 11 at 4.)

In their Motion for Judgment on the Pleadings, Defendants argue that bedspace status "is

a form of administrative segregation," rather than a punishment, and therefore Plaintiff's

due process rights were not violated.  (Doc. 42 at 11–12.)

"The first step in substantive due process analysis is to identify the constitutional

right at stake."  *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (citing *Collins v.*

*City of Harker Heights*, 503 U.S. 115, 125 (1992)).  That right for pretrial detainees is the

right to be free from conditions constituting punishment during their confinement, as discussed above. *See Bell*, 441 U.S. at 535–37.  Because the purpose of Plaintiff's bedspace status designation was not punitive, but rather, was reasonably related to NWSCF's interest in maintaining institutional order and safety, Plaintiff has failed to state a claim for violation of his substantive due process rights.

I therefore recommend that Defendant's Motion for Judgment on the Pleadings be GRANTED, insofar as it seeks dismissal of Plaintiff's substantive due process claims.

## VI.    Failure to Exhaust Administrative Remedies

Defendants argue that Plaintiff's constitutional claims regarding his disciplinary hearing are also barred by the Prison Litigation Reform Act (PLRA) because he failed to exhaust his administrative remedies.  (Doc. 42 at 12–15.)  Specifically, they claim that Plaintiff never filed an Inmate Disciplinary Appeal Form, pursuant to DOC Directive 410.01, which sets out facility rules and the inmate disciplinary hearing process. (Doc. 42 at 14 (citing Doc. 42-1 at ¶ 13).); *see* DOC Directive 410.01.  Plaintiff responds that he exhausted his administrative remedies by following DOC Administrative Directive 320.01, which describes the process for inmates to bring grievances against facility officials.  (Doc. 43 at 12 (citing *State of Vt. Agency of Human Servs., Dep't. of Corr.,Corr. Servs.: Directive #320.01 Offender Grievance Sys. for Field & Facilities* (2007), *available at* http://www.doc.state.vt.us/about/policies/pdu-general/rpd/

correctional-services-301-550/301-335-facilities-general/320.01.pdf [hereinafter DOC

Directive 320.01] [9]).)

  The PLRA provides that "[n]o action shall be brought with respect to prison

conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009)

(alterations in original) (quoting 42 U.S.C. § 1997e(a)); *see generally Ross v. Blake*, 136

S. Ct. 1850 (2016).  "[T]he PLRA's exhaustion requirement applies to all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Johnson v. Killian*, 680 F.3d

234, 238 (2d Cir. 2012) (per curiam) (alteration in original) (quoting *Porter v. Nussle*,

534 U.S. 516, 532 (2002)).

  Plaintiff notes that an acceptable grievance under DOC Directive 320.01 includes

"any alleged violation of civil, constitutional[,] or statutory rights, or of a departmental

administrative directive," such as his claims here.  (Doc. 43 at 12 (citing DOC Directive

320.01 at 5, ¶ 6(a)).)  He also points out that "disciplinary decisions and dispositions are

not enumerated[] as 'unacceptable' grievances." (Doc. 43 at 13 (citing DOC Directive

320.01 at 5–6, ¶ 6(b) (describing non-acceptable grievances as those that fail to use the

informal complaint process as an initial matter, use profanity or obscenity, are repetitive

---

[9]  The Court may take judicial notice of DOC procedures.  *See Christman v. Skinner*, 468 F.2d
723, 726 (2d Cir. 1972) (finding it proper for the district court to take judicial notice of state prison rules
and regulations).

to a grievance already filed or under investigation, are beyond the DOC's jurisdiction, are

incomplete, or failed to adhere to the grievance timeline)).)

Defendants offer no explanation as to why DOC Directive 320.01 was not an

appropriate avenue for Plaintiff to seek redress for his constitutional claims, and none is

found in the documents cited by both parties.  At this preliminary stage of the

proceedings, the Defendants have failed to establish that Plaintiff failed to comply with

the PLRA's exhaustion requirement.  It therefore follows that Defendants have failed to

meet their burden under Rule 12(c) of proving "that no material issue of fact remains to

be resolved and that [they are] entitled to judgment as a matter of law" on this claim.

*Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (citation omitted); *see

also Orecchio v. Conn. River Bank, N.A.*, No. 1:08–CV–164, 2009 WL 2160583, at *2

(D. Vt. Jul. 14, 2009); *Fab-Tech, Inc. v. E.I. Du Pont De Nemours & Co.*, No. CIV

104CV275, 2006 WL 3702753, at *4 (D. Vt. Dec. 13, 2006).

## VII.   Punitive Damages

Finally, Defendants seek dismissal of Plaintiff's claim for punitive damages,

arguing that Plaintiff has failed to allege facts sufficient to show that any of the

Defendants acted with evil motive or intent.  (Doc. 42 at 15.)  Punitive damages may be

awarded in § 1983 actions only when the plaintiff can show that the defendant's conduct

was "motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference

to the federally protected rights of others."  *DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir.

2003) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *see also New Windsor Volunteer

Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006) ("To be entitled to an

25

award of punitive damages, a claimant must show a 'positive element of conscious wrongdoing.'" (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999))).  Under the Federal Rules of Civil Procedure, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Without providing any particular facts or allegations, Plaintiff claims he is entitled to punitive damages.  (Doc. 11 at 6.)  He fails to allege any evil motive or conscious wrongdoing by Defendants.  Therefore, his claims for punitive damages should be dismissed, and the Court should GRANT Defendants' Motion on this basis.

## VIII.  Leave to Amend

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once, "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  It is well settled, however, that "leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead," even by a *pro se* litigant, "should be denied").  An amendment is "futile" if the proposed pleading would not withstand a motion to dismiss.  *See, e.g.*, *Jones v. Phelps Corp.*, No. 3:14–cv–84 (GLS/DEP), 2014 WL 2195944, at *3 (N.D.N.Y. May 22, 2014).

26

Applied here, Plaintiff has already amended his complaint.  (*See* Doc. 11.)

Moreover, further amendment would be futile because Plaintiff's claims fail in substance,

as discussed above.  When better pleading will not cure a complaint's defects, leave to

amend should be denied.  *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.

1990).  I therefore recommend that the Court decline to grant Plaintiff leave to again

amend his Amended Complaint.

<u>**Conclusion**</u>

For these reasons, I recommend that Defendants' Motion for Judgment on the

Pleadings (Doc. 42) be GRANTED and that Plaintiff's Amended Complaint (Doc. 11) be

DISMISSED.  More precisely, I make the following findings/recommendations, as stated

above:

1.  Plaintiff has failed to sufficiently plead Defendant Brouillette's personal

    involvement in the alleged constitutional violations regarding the extension of

    Plaintiff's disciplinary segregation and his designation to bedspace status.  Thus, it

    is recommended that the Court GRANT Defendants' Motion on the basis of

    Brouillette's lack of personal involvement, and DISMISS the claims for monetary

    damages against Brouillette in his personal capacity.  *See supra* pp. 8–11.

2.  Plaintiff's claims for injunctive relief against Defendants are moot.  Therefore, the

    Court should GRANT Defendants' Motion on the basis of lack of subject-matter

    jurisdiction and DISMISS Plaintiff's claims for injunctive relief against

    Defendants in their official capacities.  *See supra* pp. 11–14.

3.   Plaintiff has not pleaded a deprivation of his due process rights with respect to his disciplinary segregation claims, or an injury to a cognizable liberty interest with respect to his bedspace status claims under the Fourteenth Amendment Due Process Clause.  Therefore, the Court should GRANT Defendants' Motion on the basis that Plaintiff has not established violations of his procedural and substantive due process rights, and DISMISS any remaining claims by Plaintiff against Defendants.  *See supra* pp. 14–23.

4.   Plaintiff has not sufficiently pleaded a claim for punitive damages.  Therefore, the Court should GRANT Defendants' Motion on this basis and DISMISS any punitive damages claims.  *See supra* pp. 25–26.

Dated at Burlington, in the District of Vermont, this 4th of November, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).